Filed 12/19/13  P. v. Apostolas CA4.1
Opinion following order vacating prior opinion

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063476 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD241724) |
| STEVEN J. APOSTOLAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Dwayne Moring, Judge.  Affirmed.

Patrick Morgan Ford for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Sean M. Rodriquez and Jennifer Truong, Deputy Attorneys General, for Plaintiff and Respondent.

Steven Apostolas was charged in an amended complaint with numerous counts and appended enhancements, and with 10 prior serious felony convictions and 10 prior strike convictions. He faced life sentences if convicted. Instead, he entered into a plea agreement to plead guilty to numerous counts and appended enhancements, and to admit to a prior serious felony conviction and prior strike conviction in return for a stipulated determinate prison term of 30 years. On appeal, he asserts the trial court abused its discretion when it denied his motion to withdraw his guilty plea, because his plea was not knowing and voluntary and he was denied effective assistance of counsel.

## FACTUAL AND PROCEDURAL BACKGORUND

A. <u>Facts</u>

The facts, drawn from the probation report, are that Apostolas was previously convicted of 10 counts of lewd acts on the children of his then-girlfriend. On June 22, 2012, Apostolas drove a car to a local park, where he was seen in the company of the victim, an eight-year-old homeless male. Police were concerned when the car Apostolas was driving was shown to be owned by a registered sex offender, and they investigated but could not find Apostolas or the victim. They returned the following day, and located and interviewed the victim. When they asked the victim if Apostolas had made him uncomfortable, he said, "Yea, he told me people come here to have sex." When police asked if Apostolas had touched his private parts, the victim looked away, crossed his legs, crossed his hands over his stomach, and said, "No" in a low voice. However, the

2

victim told police Apostolas had coerced him into removing his clothes and going into a small body of water with him.

Two days later, police took the victim to the Polinsky Center. During a June 27 interview by a social worker at the center, the victim stated Apostolas had touched the victim's private parts under his clothing on more than one occasion.

B. <u>The Guilty Plea</u>

The amended complaint charged Apostolas with three counts of lewd and lascivious touching and one count of attempted sexual abuse with restraint, and also alleged numerous enhancements and prior serious felony and prior strike convictions. He faced life sentences, with a minimum 30-year term, on each count for which he was convicted. In exchange for a stipulated determinate sentence of 30 years, he pleaded guilty and admitted the underlying factual allegations, the enhancements, and the prior serious felony convictions and prior strike convictions. He acknowledged his guilty plea was entered freely and voluntarily, his judgment was not impaired, and he understood the guilty plea surrendered his rights to confront and cross-examine witnesses against him and to present evidence. At the August 2, 2012, court hearing at which the plea was accepted, he verbally reiterated these admissions; the court found Apostolas acted knowingly and voluntarily, and that there was a sufficient factual basis for the plea.

C. <u>The Motion to Withdraw the Plea</u>

Five weeks later, Apostolas filed a *Marsden*[1] motion alleging his counsel (Mr. Aragon) did not investigate the case or communicate with Apostolas, coerced him into agreeing to plead guilty without giving him the opportunity to consult with others or to review the discovery, and allowed him to plead guilty even though he was in "no mental state" to do so. The following week, Apostolas filed an in propria persona motion seeking to withdraw his guilty plea that reiterated these allegations. On October 31, 2012, new counsel for Apostolas filed a more detailed motion seeking to withdraw his plea, alleging Aragon had refused to provide an investigator for the case, and alleged Aragon told Apostolas his case was a "lost cause" and to stop wasting the court's and Aragon's time. Apostolas claimed he did not understand the consequences of his plea agreement, had only been given 15 minutes to review the charges in the amended complaint and, had he known the terms to which he ostensibly agreed, he would not have pled guilty.

Aragon filed a declaration stating he had extensively discussed the evidence with Apostolas, along with possible defenses and his potential sentencing exposure. At no time did Aragon say it was a lost cause or to stop wasting anyone's time, and he did not decline a request by Apostolas for an investigator. Aragon averred he had met with Apostolas in advance of the plea hearing to discuss the new charges with him, reviewed the change of plea form with him at the plea hearing and described the consequences of

---

[1]     *People v. Marsden* (1970) 2 Cal.3d 118.

4

pleading guilty, and that Apostolas understood the impact of his plea and wanted to plead guilty.

Apostolas called no witnesses at the hearing on his motion to withdraw his plea. The People called Aragon, who testified he reviewed the discovery, including twice watching a video of one of the interviews of the victim, and also went to the park at which the molestations occurred. He met with Apostolas and thoroughly reviewed the materials with him, and offered to give him all of the materials but Apostolas declined. Aragon discussed the inconsistencies in the victim's statements with Apostolas and asked for his opinion as to the minor's credibility, and also advised him of Aragon's concerns that Apostolas's prior misconduct with children would be potential Evidence Code section 1101, subdivision (b), evidence at trial. Aragon was "perfectly willing" to take the case to trial, and considered consulting with an expert about suggestive questioning to undermine the minor's testimony, but Apostolas stated the victim was credible and he wanted to avoid a longer sentence, which obviated the need to consult with an expert. Aragon negotiated the plea agreement and discussed whether to take the plea or to go to trial and attack the victim's credibility, and Apostolas instructed him to accept the offer. Aragon also met with Apostolas one or two days before the plea agreement hearing to discuss the new charges, and Apostolas affirmed his desire to take the plea deal. On the day of the plea hearing, he appeared to understand what was going on, and Aragon again reviewed the plea agreement with him. Apostolas, after having an additional "couple of hours" to consider it, still wanted to accept the agreement.

5

The court found Aragon's testimony credible, and that Apostolas's declaration containing contrary allegations was not.  The court found there was no evidence Aragon coerced him into accepting the agreement, and found Apostolas did understand the nature of the plea and its consequences.  The court also found Aragon "did a thorough job" in investigating the case, in explaining to Apostolas the "pros and cons" of the case, and in negotiating the plea agreement.

ANALYSIS

A. Legal Standards

Penal Code section 1018 provides, in part: "On application of the defendant at any time before judgment . . . , the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice."  In general, "[m]istake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea."  (*People v. Cruz* (1974) 12 Cal.3d 562, 566.)  However, "[a] plea may not be withdrawn simply because the defendant has changed his mind." (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.)  The defendant has the burden to show, by clear and convincing evidence, there is good cause for withdrawal of his or her guilty plea.  (*Id.* at p. 1457.)

The decision to grant or deny a motion to withdraw a guilty plea is left to the sound discretion of the trial court.  (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254; *People v. Nance, supra,* 1 Cal.App.4th at p. 1457.)  "A denial of the motion will not be

6

disturbed on appeal absent a showing the court has abused its discretion." (*Nance,* at p. 1456; see also *Fairbank,* at p. 1254 ["A decision to deny a motion to withdraw a guilty plea . . . is final unless the defendant can show a clear abuse of [the trial court's] discretion."].) "Moreover, a reviewing court must adopt the trial court's factual findings if substantial evidence supports them." (*Fairbank,* at p. 1254.) Our role in determining whether Apostolas satisfied his burden of producing clear and convincing evidence in the trial court in support of his motion to withdraw a guilty plea is a limited one, because " '[a]ll questions of the weight and sufficiency of the evidence are addressed, in the first instance, to the trier of fact, in this case, the trial judge. We cannot reverse his order if there is substantial evidence or a reasonable inference to be drawn from it which supports the order. Where two conflicting inferences may be drawn from the evidence it is our duty to adopt the one supporting the challenged order.' " (*People v. Harvey* (1984) 151 Cal.App.3d 660, 667.)

B. <u>Analysis</u>

Apostolas contended his plea was not a voluntary plea because Aragon coerced him into pleading guilty by telling him his case was a "lost cause" and to stop wasting the court's and Aragon's time, and by refusing to provide an investigator. Apostolas also contended his plea was not a knowing plea because Aragon did not adequately explain to him the potential exposures or the potential avenues of defense for the case. The trial court rejected these claims because it credited Aragon's testimony that he did not coerce Apostolas into accepting the agreement, that he "did a thorough job" in investigating the

7

case and explained to Apostolas the "pros and cons" of the case, and that he did discuss the charges with Apostolas, who appeared to understand the nature of the plea and its consequences. Because there was substantial evidence supporting these findings, the trial court did not abuse its discretion in concluding Apostolas's plea was entered knowingly and voluntarily. (*People v. Hunt* (1985) 174 Cal.App.3d 95, 104 (*Hunt*).)

Apostolas's alternative claim is that he was denied effective assistance of counsel because Aragon did not hire an investigator or otherwise fully investigate the case, but instead merely reviewed the materials turned over by the prosecution. A defendant who has been denied the effective assistance of counsel in entering a plea of guilty is entitled to reversal and an opportunity to withdraw his plea if he or she so wishes, because a valid guilty plea must be based upon a defendant's full awareness of the relevant circumstances and the likely consequences of his or her action. (*People v. McCary* (1985) 166 Cal.App.3d 1, 7-9.) We apply the two-step analysis to determine adequacy of counsel. First, Apostolas must show trial counsel did not act in a manner expected of reasonably competent attorneys acting as diligent advocates. Second, he must establish that counsel's acts or omissions resulted in withdrawal of a potentially meritorious defense. (*Hunt, supra,* 174 Cal.App.3d at pp. 104-105.)

In the context of a claim that a guilty plea should be vacated based on ineffective assistance of counsel, when a defendant expresses a desire to plead guilty, counsel acts in a manner expected of reasonably competent attorneys acting as diligent advocates when he or she has investigated carefully all factual and legal defenses available to the

8

defendant and advised the defendant of all options. (*Hunt, supra,* 174 Cal.App.3d at p. 105.) Here, the court found Aragon "did a thorough job" in investigating the case, in evaluating Apostolas's options, and in explaining to him the "pros and cons" of the case, and Aragon's testimony provides substantial evidentiary support for that finding. The trial court's rejection of Apostolas's claim of ineffective assistance of counsel as the predicate to his motion to withdraw his plea was not an abuse of discretion because there was substantial evidentiary support for the conclusion he was not denied effective assistance of counsel.

### DISPOSITION

The judgment is affirmed.


McDONALD, J.

WE CONCUR:

BENKE, Acting P. J.

HUFFMAN, J.

9